No. 44,013

GENE WALKER, *Appellant*, v. TOBIN CONSTRUCTION COMPANY and TRAVELERS INSURANCE COMPANY, *Appellees*.

(396 P. 2d 301)

Opinion filed November 7, 1964.

*Albert M. Ross*, of Kansas City, argued the cause, and *Harold K. Wells* and *James M. Barnett*, both of Kansas City, were with him on the brief for the appellant.

*Richard J. Croker*, of Kansas City, argued the cause, and *Edward M. Boddington*, *Edward M. Boddington, Jr.*, and *N. Jack Brown*, all of Kansas City, were with him on the brief for the appellees.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal in a workmen's compensation case from an order of the district court of Wyandotte County denying compensation.

The only question presented on appeal is whether the injuries sustained by the claimant in an automobile accident, while off the employer's premises during a lunch hour, arose out of and in the course of employment.

The facts are not in dispute. Only those material to the issue will be related.

The lunchtime at Tobin Construction Company on March 21, 1963, was between 12:00 and 12:30 o'clock. There were no facilities for preparing hot food on the Tobin premises, and the company neither provided lunch for the employees on the premises nor paid for the employees' lunches.

Generally the employees of Tobin brought their lunch to the premises, but a number of men went to nearby restaurants for their lunch. The men had their choice, as a matter of custom, to bring their lunch or to go out to a restaurant.

Tobin did not provide transportation for any employees going to lunch on or off the premises.

It was customary that the employees of Tobin could go where they wanted to during the lunch period, whether for the purpose of getting lunch or personal business.

Tobin's company policy did not permit employees to take company-owned vehicles to lunch. Tobin's policy in regard to company vehicles did not permit their use for any personal business except in extreme emergencies.

Gene Walker, the claimant herein, was a mechanic in the employ of Tobin on March 21, 1963. He usually left the premises at noon and drove to a restaurant to eat his lunch.

At 12:00 o'clock noon on the day in question claimant borrowed a truck owned by Capital Super Service of Topeka, Kansas, which was so identified by lettering on the sides of the vehicle. Walker had never borrowed this vehicle to go to lunch before, but on March 21, 1963, borrowed it from an employee of Capital Super Service who was not an employee of Tobin. The man using this truck on Tobin premises was under contract from the Firestone Company to Tobin to change and furnish tires for the Tobin equipment.

A co-worker of Walker by the name of Kirk, who usually brought his own lunch and ate it on the premises, rode in this truck which Walker drove off the premises to lunch. Enroute back from lunch Walker stopped the truck in the street off Tobin's premises in front of the driveway to the premises, when it was struck in the rear by an uninsured motorist. Walker was injured in the accident.

Walker admitted he had no other purpose in the lunchtime trip other than going to lunch; that his sole purpose was to eat lunch. Similarly, Kirk had no purpose in the lunchtime trip other than going to lunch.

The examiner found the claimant was taking lunch when not on duty for his employer, not on an errand for his employer, and not on company time nor on its property. He concluded the accidental injuries in question did not arise out of and in the course of the employment, and therefore denied an award of compensation. The examiner's findings and conclusions were approved by the director, and adopted by the district court on appeal.

The claimant contends there is no question but that he was on a contracted-for lunch hour for the purpose of refreshing himself. He then argues that eating lunch is incident to the employment of an employee and cites *Thomas v. Manufacturing Co.,* 104 Kan. 432, 179 Pac. 372, 6 A. L. R. 1145. This case held a lunchtime

accident *on* the premises to be compensable. There a seventeen-year-old girl who customarily took her lunch to work and ate it in the room where she worked, was injured while amusing herself by riding on a small truck during the lunchtime intermission, which had become a settled custom with the knowledge and express approval of the foreman in charge of the department, and without objection on the part of anyone. The court stated:

"   .   .   . The shortness of the intermission suggests that it was the expectation that most of the employees would remain on the premises, and the practice shown by the evidence confirms this. The purpose of the plaintiff and her associates in remaining in the factory after their lunch had been eaten was presumably to be on hand when work commenced, in order that there might be no delay—a matter in which the employer had an obvious interest.   .   .   ." (p. 434.)

The appellant quotes excerpts from an English case cited at page 435 of *Thomas v. Manufacturing Co.*, supra, to the effect that feeding oneself is essential to enable him to do his work; that it would be taking too technical a view to say that the pause in the actual course of his work for the purpose of eating his lunch was a break in his employment from the time that he stopped work to the time at which he began again; and that the court must take a broader view, and treat him as continuing in the employment of the master by the consent of the master, inasmuch as it is for the master's advantage that workmen should have an opportunity to feed themselves.

It is to be noted, however, that in both the *Thomas* case and the English case the injuries occurred while the workman was on the employer's premises. Other facts in these cases further distinguish them from the instant one.

Our court has not to this date held compensation to be payable for injuries sustained by a workman who was *off the premises* of the employer during his lunchtime, where there is no causal connection between the injury and the employer's business.

In 1 Larson, Workmen's Compensation Law, § 15.50, under the heading "Going and coming: lunch or rest periods," the following is said:

"§ 15.51 Premises rule as applicable to lunch-time travel

"Because of the prevailing practice of grouping compensation questions according to fact categories, lunch-time injuries are often discussed as if they were a unique problem. Actually, when the employee has a definite place and time of work, and the time of work does not include the lunch hour, the trip away from and back to the premises for the purpose of getting lunch is indistinguishable in principle from the trip at the beginning and end of the

work day, and should be governed by the same rules and exceptions. This approach aids markedly in achieving consistency in this field, and serves to enlarge greatly the body of precedents giving guidance in particular fact combinations.

"The basic rule, then, is that the journey to and from meals, on the premises of the employer, is in the course of employment. Conversely, when the employee with fixed time and place of work has left the premises for lunch, he is outside of the course of his employment if he falls, is struck by an automobile crossing the street, or is otherwise injured. But the same exceptions apply here as in other going and coming cases, . . ."

Numerous cases from various jurisdictions in the United States are cited in the footnotes of Larson's work to support the foregoing.

The exceptions include *off the premises* accidents to traveling salesmen where travel itself is a large part of the job; also where workmen are sent on special missions by the employer or where the purpose of the trip is partially, jointly or concurrently for the employer's special purpose.

Cases upon which the appellant relies fall within exceptions to the off the premises rule. (*Pinkston v. Rice Motor Co.,* 180 Kan. 295, 303 P. 2d 197; *Bohanan v. Schlozman Ford, Inc.,* 188 Kan. 795, 366 P. 2d 28; and *Taylor v. Centex Construction Co.,* 191 Kan. 130, 379 P. 2d 217.)

In *Pinkston* the workman was directed to go to a farm auction to protect the sale of respondent's pickup truck. Obviously the workman was on a special mission off the employer's premises. Eating chili in the auction area when the injury occurred was incidental only to the workman's special mission because the pickup truck had not been reached on the auction list before lunch.

In *Bohanan* the workman collapsed when he sat down for lunch on the premises, as was his usual custom; but the holding was that the prior physical exertion of the workman during the morning aggravated a pre-existing cardiac condition causing the workman's death.

In *Taylor* the workman was on a special mission for his employer off the premises. The workman had an automobile accident enroute back from a trip to the company doctor—a trip upon which he was directed to go by his employer. Eating his lunch enroute was merely an incident which did not deviate from his employer's special purpose, that of obtaining medical attention for his eye which was injured on the job.

Other Kansas cases cited by the appellant (*Chance v. Coal & Mining Co.,* 108 Kan. 121, 193 Pac. 889; *Tierney v. Telephone Co.,*

114 Kan. 706, 220 Pac. 190; *Kearns v. Reed*, 136 Kan. 36, 12 P. 2d 820; *Hilyard v. Lohmann-Johnson Drilling Co.*, 168 Kan. 177, 211 P. 2d 89; and *Blair v. Shaw*, 171 Kan. 524, 233 P. 2d 731) are all distinguishable either on the ground that the workman was injured *on the premises* of the employer, or that there was a causal connection between the injury to the workman and the employer's business.

The appellant seeks to bring himself within the coverage of the workmen's compensation act, after reviewing many of the foregoing cases, by arguing as follows:

"Certainly all of these cases have held that if the workman is engaged in some *custom or habit* known to the employer, even if it is during his own spare time, or even if it is during his lunch hour, or while getting a drink of water, then the injury arises out of and in the course of the employment and he is entitled to receive compensation. This would be particularly true when this known custom or habit which occurs during the lunch hour leads to an injury, since eating one's lunch is incidental to the employment. The break to refresh oneself in the middle of the day inures to the benefit of the employer."

While the court did consider a workman's custom or habit which was known to the employer in some of the foregoing cases, unfortunately for the appellant the decisive issue was not premised upon such point, absent a causal connection between the workman's injury and the employer's business.

We hold where the workman is on no mission or duty for the employer, and an accident occurs to the workman while he is off the premises of the employer during the workman's lunchtime, the accident does not arise out of and in the course of the workman's employment. We think when the employment does not contemplate work on the part of the workman during the lunch hour, the workman's trip away from and back to the premises of the employer for the sole purpose of getting lunch is indistinguishable in principle from the trip at the beginning and at the end of the work day. (See, *Madison v. Key Work Clothes*, 182 Kan. 186, 318 P. 2d 991; and G. S. 1949, 44-508[k].)

There was substantial competent evidence to sustain the lower court's finding that the accident and injuries sustained by the appellant did not arise out of and in the course of employment, and it did not err in approving and adopting the findings and conclusions of the director denying compensation.

The judgment of the lower court is affirmed.