(894 P.2d 901)
No. 72,299

MELVA CHAPMAN, *Appellant*, v. BEECH AIRCRAFT
CORPORATION, *Appellee*.

Opinion filed April 21, 1995.

*Brian D. Pistotnik,* of Brian and Tamara Pistotnik, P.A., of Wichita, for appellant.

*Jeff C. Spahn, Jr.,* of Martin, Pringle, Oliver, Wallace & Swartz, L.C., of Wichita, for appellee.

Before GERNON, P.J., BRAZIL, J., and JOHN E. SANDERS, District Judge, assigned.

SANDERS, J.: Melva Chapman appeals the Workers Compensation Board's (Board) finding that her injuries did not arise out of and in the course of her employment with Beech Aircraft Corporation (Beech).

The facts are not disputed. Chapman was injured while going to work as she crossed, on foot, a busy public street (Central Street) in Wichita, Kansas. The street runs between the Beech's company-owned parking lot and the aircraft plant where Chapman worked. Beech owns all of the property on the south side of Central where the parking lot is located for a distance of about one mile. The majority of the property on the north side is also owned by Beech, with the exception of a few residences. All Beech employees who park in the lot are required to cross Central Street in order to get to work. There are three crosswalks available for use by the employees who cross the street in the general area in question. Beech issues parking stickers to its employees which allow them to park in this particular lot.

On the day of Chapman's injury, January 8, 1991, she was to report for work at 7:00 a.m. She parked in the lot at approximately 6:40 a.m. and was injured when she was struck by a vehicle while she was attempting to cross Central Street in the middle of the block. Chapman was not using any of the designated crosswalks at the time of the occurrence. She had not yet clocked in for work at the time of the accident. In summary, Chapman was between the premises of her employer on a public street at the time of the injury and had not yet assumed her duties of employment.

The Administrative Law Judge (ALJ) found that her injuries arose out of and in the course of her employment and, accordingly, entered an award. The Board reversed the ALJ's findings; hence this appeal.

The sole issue on appeal is whether the Board erred in finding that Chapman's injuries did not arise out of and in the course of her employment with Beech.

Chapman was injured in January 1991. K.S.A. 1990 Supp. 44-501(a) provided:

"If in any employment to which the workers compensation act applies, personal injury by accident arising out of and in the course of employment is caused to

an employee, the employer shall be liable to pay compensation to the employee in accordance with the provisions of the workers compensation act."

K.S.A. 1990 Supp. 44-508(f), commonly known as the "going and coming rule," provided an exception where an employee is going to work but is not yet on the employer's premises:

"The words 'arising out of and in the course of employment' as used in the workers compensation act shall not be construed to include injuries to the employee occurring while the employee is on the way to assume the duties of employment or after leaving such duties, the proximate cause of which injury is not the employer's negligence. An employee shall not be construed as being on the way to assume the duties of employment or having left such duties at a time when the worker is on the premises of the employer or on the only available route to or from work which is a route involving a special risk or hazard and which is a route not used by the public except in dealings with the employer."

Thus, there are two exceptions to the general rule that an employee is not eligible for workers compensation when he or she is injured either on the way to or from his or her employment: the "premises" exception and the "special hazard" exception.

In workers compensation cases, an appellate court may substitute its judgment for that of the Board on questions of law. *Reeves v. Equipment Service Industries, Inc.*, 245 Kan. 165, 173, 777 P.2d 765 (1989); see K.S.A. 1990 Supp. 44-556(a) .

"[T]he question of whether the 'going and coming' rule applies must be addressed on a case-by-case basis." *Messenger v. Sage Drilling Co.*, 9 Kan. App. 2d 435, 438, 680 P.2d 556, *rev. denied* 235 Kan. 1042 (1984).

In entering an award for Chapman, the ALJ addressed both exceptions to the going and coming rule. He first found that the special hazard exception did not apply because although Central Street did have a special risk or hazard, it was used by the public other than in dealing with Beech. He concluded, however, that Chapman's injuries were compensable because Kansas would follow the majority rule as set forth in 1 Larson's Workmen's Compensation Law § 15.14(a) (1994): that employees injured on a public road while going between two parts of the employer's premises are allowed compensation.

In reversing the ALJ, the Board briefly addressed the special hazard exception. It stated that Central Street is not a route in-

volving a special risk or hazard and that it is not one that the public does not use.

As for the premises exception, the Board stated:

"Special Administrative Law Judge Morrissey, in awarding benefits to the claimant found that Kansas would follow the more liberal rules set out in Larson's Workers [sic] Compensation Law regarding employees on public roads going between two parts of an employer's premises. The determining factor here deals with the term 'premise[s].' The Kansas Court of Appeals in *Thompson v. Law Offices of Alan Joseph*, 19 Kan. App. 2d 367 (1994), rejected the liberal attitude of Larson's regarding the term premises stating that Kansas narrowly construes the term premises to be a place controlled by the employer or a place where an employee may reasonably be during the time he or she is doing what a person so employed may reasonably do during or while the employment is in progress."

The Board concluded that Chapman was not on Beech's premises when she was injured as that term is defined in *Thompson v. Law Offices of Alan Joseph*, 19 Kan. App. 2d 367, 869 P.2d 761, *aff'd* 256 Kan. 36, 883 P.2d 768 (1994), and, therefore, her injuries were not compensable.

## I. *The Premises Exception.*

Both the ALJ and the Board based their findings on whether Chapman was on Beech's premises when she was injured. In Kansas, an employer-owned parking lot, or one under the exclusive control and supervision of the employer, is considered the employer's premises for workers compensation purposes. See *Teague v. Boeing Airplane Co.*, 181 Kan. 434, 312 P.2d 220 (1957). Beech owns the parking lot where Chapman parked her car; therefore, Chapman was on Beech's premises while she was in Beech's parking lot. She had, however, moved out of the parking lot and into the public street when she was injured.

The Board relied on *Thompson*, 19 Kan. App. 2d 367, in finding that Chapman was not on Beech's premises. There, the claimant parked in the public parking garage where her employer paid the parking fee, walked via a skywalk into the building where her employer's offices were located, rode in an elevator to the floor where her employer and another firm's offices were located, and fell as she stepped out of the elevator into the common area be-

tween the two sets of offices. Thompson argued that both the parking garage and the common area where she fell were her employer's premises. The Court of Appeals set forth the definition of an employer's premises as follows:

"For workers compensation purposes, Kansas narrowly construes the term 'premises' to be a place controlled by the employer or a place where an employee may reasonably be during the time he or she is doing what a person so employed may reasonably do during or while the employment is in progress." 19 Kan. App. 2d 367, Syl. ¶ 2.

The Kansas Supreme Court, in affirming *Thompson*, noted in regard to the premises question:

"This court has repeatedly refused to adopt a 'proximity' or 'zone of employment' rule. In [*Murray v. Ludowici-Celadon Co.*, 181 Kan. 556, 313 P.2d 728 (1957)], this court rejected the employee's claim that he was 'substantially' or 'sufficiently' on his employer's premises at the time of the injury, and we denied compensation for an injury which occurred in an alley running through the employer's parking lot. In [*Madison v. Key Work Clothes*, 182 Kan. 186, 318 P.2d 991 (1957)], the employee was injured on the sidewalk in front of the employer's business, and this court again refused compensation. In *Walker v. Tobin Construction Co.*, 193 Kan. 701, 396 P.2d 301 (1964), the employee was injured on a public street in front of the employer's premises and, again, this court refused compensation.

. . . .

". . . Linda was not on her employer's premises at the time of the injury, nor was she yet performing any duties associated with her employment. She was merely on her way to work, an activity which the Kansas Legislature has made not compensable. Any risk of injury in the office building was no greater than that to which any member of the general public using the office building was subjected. Linda was not on her employer's premises at the time of her injury, and therefore the injury is not compensable. We recognize this to be the minority view. However, the legislature has taken a position to that effect, and any change in that position will have to be by way of legislation." 256 Kan. at 46-47.

In the case at bar, Chapman was on premises owned by Beech while she was in the parking lot. Clearly, however, she was not on her employer's premises when she was injured while crossing Central Street. Thus, this case is factually similar to *Murray* and *Thompson*. We hold that the premises exception does not apply to the factual situation here since Chapman was not physically upon Beech's premises at the time of the injury.

## II. *The Special Hazard Exception.*

Chapman argues that the special hazard exception to the going and coming rule governs this case. As noted previously, that exception provides that the going and coming rule does not apply when the worker is "on the only available route to or from work which is a route involving a special risk or hazard and which is a route not used by the public except in dealings with the employer." K.S.A. 1990 Supp. 44-508(f).

The ALJ found that Central Street had a special risk or hazard, while the Board found that it did not. Both found that it was used by the public other than in dealing with Beech.

Since its enactment, only one Kansas case has construed the second exception. Neither Chapman nor Beech discusses *Bay v. Funk*, 19 Kan. App. 2d 440, 871 P.2d 268 (1994), where the issue was whether the injured employee, Bay, could maintain his separate civil action against another employee, Funk, whose negligence caused Bay's injuries. Because the Workers Compensation Act prohibits one employee from seeking recovery against a fellow employee when workers compensation applies to the injury, the court had to determine whether Funk " 'would have been entitled to receive compensation had he been injured in the same accident.' " 19 Kan. App. 2d at 442 (quoting *Wells v. Anderson*, 8 Kan. App. 2d 431, 434, 659 P.2d 833, *rev. denied* 233 Kan. 1093 [1983]).

Funk was coming onto the employer's premises on his way to work when he ran a stop sign located at the plant's entrance, hitting Bay as Bay was walking beside a truck stopped in the entrance. The truck was stopped there because Bay was required to check the seal on its rear door before it could proceed.

The court agreed with the trial court that Funk would have been covered by the Act had he been injured under the second exception to the going and coming rule. To get to work, Funk's employer required him to take a certain county road, which ends at the plant where Funk worked. Thus, this road was the only route available to Funk. Moreover, "[t]he only people using the road were people traveling to and from the plant." 19 Kan. App. 2d at 441.

As for the special hazard requirement under the second exception, the court noted that there is not much guidance to the definition of the term "special risk"; however, it determined that the employer created a special risk "by directing employees and drivers to park on the road for inspection" and "by directing pedestrians to walk in the path of oncoming traffic to conduct these inspections." 19 Kan. App. 2d at 443.

Chapman argues that the only available route from the parking lot to her place of employment is across Central Street, that this route involves a special risk or hazard because it is a major city artery and roadway, and that the route crossing Central is not used by the public except in their dealings with Beech.

Beech argues that Chapman had other available routes—namely three crosswalks, that no evidence was introduced that crossing the street posed a special risk or hazard, and that Chapman admitted that the general public uses Central Street, including those not conducting business with Beech.

Taking each element of the exception separately, the first question is whether Chapman took the only available route from Beech's parking lot to Beech's plant. It is true, as Chapman argues, that she had to cross Central Street in order to get to the plant where she worked. It is also true, as Beech argues, that she had several choices as to where she could cross Central other than the exact point she chose.

The question turns on how narrowly we define the term "available route." There is no evidence before us that Chapman was required to follow a fixed walkway or exact course while crossing Central between the parking lot and the plant.

Beech argues only that there were other available routes, including some crosswalks nearby. It does not argue that the crosswalks are safer routes, that they are legal routes, or that Chapman's path was illegal. The problem with Beech's analysis is that one could define an infinite number of different "routes" at various points along the curbing and then conveniently speculate that any of the other countless paths were other "available routes" which would have taken plaintiff safely across the street.

We believe it reasonable to adopt a more general definition of the term "available route" under the unique facts of this case, since there was no exact course or singular path which Chapman was compelled by circumstances to negotiate while on her way to work. We find, given the location of Chapman's assigned parking lot in relation to the Beech plant, that circumstances required her to follow the only route available to her, a route which, by necessity, took her generally in a southerly direction across Central Street to the Beech plant. Chapman was on that "route" when she was injured.

The second element of this exception is that the route taken must involve a special risk or hazard. Chapman claims that Central Street poses a special risk or hazard because it is a busy, public street—a main city artery. Beech argues that it merely poses ordinary, everyday risks, not special risks.

As previously noted, the *Bay* court indicated that there is not much guidance anywhere as to what constitutes a special risk. In *Chapman v. Victory Sand & Stone Co.*, 197 Kan. 377, 416 P.2d 754 (1966), the special risk was railroad tracks that the employees had to cross to get to work. In *Bay*, it was the trucks that were parked and pedestrians walking in the road that constituted the special hazard.

We have examined the record and find ample evidence to indicate that Central Street is a heavily traveled major artery in Wichita, Kansas. We note also that the accident occurred on January 8, 1991, at approximately 6:40 a.m. We take judicial notice of the fact that it is still dark in Kansas at that time of day during that time of year. Given these circumstance, we conclude that Chapman's route to work constituted a special risk or hazard within the meaning of the statute.

The last element of the special risk exception is that the route must not be used by the public except in dealing with the employer. Chapman argues that the public does not cross Central Street in the area in question except in dealing with Beech. Beech contends that the public does use Central Street and that Chapman admitted this. Beech's argument misses the point. The route in question is *across* Central, not *along* it.

Chapman testified that the stretch along Central where Beech's plant and property is located is approximately one mile in length and that to her knowledge, Beech owns everything on both the north and south sides of that stretch of Central. She also testified that only pedestrians who are either Beech employees or who have dealings with Beech would be crossing Central at the general location where she crossed. Nothing in the record indicates the contrary. Although one may speculate that pedestrians might cross Central at that location for a multitude of purposes, there is no evidence that such occurs.

The decision of the Workers Compensation Board is reversed. That portion of the ALJ's decision finding Chapman's accident compensable and awarding compensation to her and against Beech is reinstated.

Reversed.